554 So.2d 1371 (1989)
Sam McINTYRE
v.
Thomas D. SAUNDERS, South Louisiana Electric Cooperative Association, Rural Electric Insurance Corp., and American Risk Assurance Company.
No. CA 88 1486.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
Writ Denied March 22, 1990.
*1372 Charles B. Plattsmier, Morgan City, for plaintiff-appellee.
C. Michael Hart, Baton Rouge, for defendants-appellants Thomas Saunders, et al.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
LOTTINGER, Judge.
The primary issues in this personal injury appeal are whether the plaintiff should have been allocated with any fault and whether the amounts awarded for general damages and lost wages were within the jury's discretion.

FACTS
The accident giving rise to this suit occurred at approximately 1:30 a.m. on May 14, 1984, on Louisiana Highway 662, a rural, two-lane road just north of Amelia, Louisiana. The particular section of Highway 662 where the accident occurred forms a long, shallow curve.
Sometime prior to the accident, Thomas Saunders, an employee of South Louisiana Electric Cooperative Association (SLECA), was working to restore power to an area where a utility pole had been struck in an unrelated accident. Saunders decided that while in the area, he would attend to a totally separate matter, which involved turning a switch on a particular utility pole located adjacent to the northbound lane of Highway 662. Saunders proceeded down Highway 662, traveling in the southbound lane to a point opposite where the pole was located. Rather than pulling his truck completely off the highway and parking on *1373 the shoulder, Saunders drove his truck into the northbound lane and parked at least partially in that lane. Leaving his headlights on, Saunders got out of the truck to turn the switch. Five to seven minutes later, plaintiff approached from the south, traveling in a northerly direction at approximately 45 miles per hour, and collided with the SLECA truck in the northbound lane. Plaintiff's left ankle was badly injured in the collision.
Plaintiff subsequently filed suit against Thomas Saunders, SLECA and its insurer, Federal Rural Electric Insurance Corporation. After a trial by jury, judgment was rendered in favor of plaintiff, finding Saunders 100 percent at fault, and awarding the following damages.

Past and future physical and mental
pain, suffering and distress .............. $ 75,000.00
Past and future disability ................ 20,000.00
Past and future lost earnings ............. 450,000.00
Past and future medical expenses .......... 20,000.00
 ___________
 Total $565,000.00

Defendants have appealed the judgment, arguing the jury erred in finding plaintiff completely free of fault and in awarding an excessive amount for lost wages. Plaintiff answered the appeal, contending the jury awarded plaintiff an insufficient amount in general damages.

ALLOCATION OF FAULT
Defendants concede the jury's determination that Saunders was negligent is supported by the evidence. However, they also contend the jury's determination that plaintiff was completely free of fault was manifestly erroneous.
A motorist on a public highway has a duty to maintain a careful lookout. Chaisson v. J. Ray McDermott & Co., 324 So.2d 844 (La.App. 1st Cir.1975), writ denied, 328 So.2d 86 (La.1976). Nevertheless, a motorist may generally assume the road is safe for travel and he is not required to anticipate unexpected obstructions in his lane of traffic which are, under the circumstances, difficult to discover. U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La.1976); Parker v. Continental Ins. Co., 341 So.2d 593 (La. App. 2d Cir.1977). In deciding whether a motorist who strikes a stationary vehicle obstructing his lane should have observed the vehicle in time to avoid a collision, there are no hard and fast rules. In making this determination all of the facts and circumstances surrounding a particular case must be considered, including the locality of the accident, the lighting conditions, the respective positions of the vehicles, visibility and the presence and operation of lighting or warning equipment. Ramsey v. Langston, 140 So.2d 775 (La.App. 2d Cir.1962). The standard to be applied is one of reasonableness. Chaisson; Ramsey.
A determination by the trier-of-fact as to allocations of fault is a factual finding which can not be overturned in the absence of manifest error. Carlin v. Blanchard, 537 So.2d 303 (La.App. 1st Cir.1988). Particularly where there is conflicting testimony, a jury's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Percy v. Perkins, 468 So.2d 815 (La.App. 1st Cir.), writ denied, 475 So.2d 355 (La.1985).
In the present case, there is conflicting evidence on a number of crucial points, including plaintiff's speed, whether the truck's emergency flashers were on, the portion of the northbound lane obstructed by Saunders' truck and whether plaintiff consumed alcohol in close temporal proximity to the accident. Another crucial point on which there was conflicting evidence was the position in which Saunders parked the truck. According to Saunders' testimony, it was parked parallel to the curb, with its headlights shining down the northbound lane. However, Mr. Sylvanus Walker, plaintiff's accident reconstruction expert, stated Saunders' testimony was inconsistent with the final resting place of the truck after the accident. From his evaluation of the accident, particularly the final resting places of the respective vehicles, he concluded Saunders' truck was parked at an angle to the curb, rather than parallel to it. This is an important point because Walker testified that the angled position of the truck would have made its headlights appear further away than they actually were, and would have made it difficult to determine *1374 which lane the headlights were in. He also was of the opinion that the curve in the highway would have caused a perception that the headlights were moving. Plaintiff, in fact, testified he saw the truck's headlights at least a quarter of a mile away, but did not realize they were not moving and were in his lane until it was too late to stop. Mr. Walker concluded given the circumstances, particularly the curve in the road and the angled position of Saunders' truck, that by the time plaintiff reasonably could have perceived the truck was in his lane, he would have had insufficient time and distance in which to brake and avoid the collision.
The present case is a close one. However, after a thorough review of the record, we can not say the factual findings the jury obviously made in favor of plaintiff were manifestly erroneous. Accordingly, the jury's finding that plaintiff was not guilty of any fault must be affirmed. See, Darby v. Lemoine, 410 So.2d 1271 (La.App. 3rd Cir.1982); Carter v. Adkins, 189 So.2d 49 (La.App. 2d Cir.), writ refused, 249 La. 749, 190 So.2d 912 (1966).

LOST EARNINGS
Defendants argue the $450,000.00 award made by the jury for past and future lost earnings was excessive.
An award for lost future earnings is speculative by nature and intrinisically insusceptible of calculation with mathematical certainty. Landry v. State Farm Ins. Co., 529 So.2d 417 (La.App. 1st Cir.1988). Thus, the trier-of-fact must exercise sound discretion in rendering an award consistent with the record which does not work an injustice on either party. Id. In the present case, the award for plaintiff's past lost wages is also speculative because plaintiff did not have a well-established earnings record in his occupation when injured. An award for lost earnings is predicated not merely upon the difference between a plaintiff's earnings before and after his injury, but rather upon the difference between his earning capacity before and after the accident. Id. Thus, awards for loss of future earnings encompass the loss of a plaintiff's earning potential. Before an appellate court can disturb such an award, the record must clearly reveal that the trier-of-fact abused its discretion in making the award. Id.
At the time he was injured, plaintiff was employed by Continental Diving Service, Inc. as a commercial diver, having been promoted to that position in January of that year. For approximately two years prior to that, he was employed by Continental as a tender or apprentice diver. The terms under which plaintiff worked provided that he was paid only when he worked. If the weather did not permit diving or if no work was available, plaintiff was not paid. During these periods, he collected unemployment compensation.
In 1982, plaintiff's earnings were $12,602.50[1]; he also received unemployment benefits totalling $1,156.00 that year. His earnings during 1983 were $12,820.46 and he received $3,100.00 in unemployment. His earnings for 1984, up until the time of his injury on May 14, were $3,053.11; his unemployment benefits totalled $1,155.00. Plaintiff stated his earnings would have been greater for the remainder of 1984 if he had not been injured, because most diving was done during the warmer months.
Following his injury, plaintiff returned to his family home in Illinois to recuperate. By February, 1985, plaintiff had reached maximum recovery, but was assessed with a permanent 50 percent impairment of his left ankle. Shortly thereafter, he consulted Dr. Keith Van Meter, a physician specializing in hyperbaric or diving medicine. Dr. Van Meter thought it inadvisable for plaintiff to ever return to commercial diving because of the continued pain he suffered in his ankle. Dr. Van Meter explained that one of the primary reasons for his conclusion was that a diver must carefully note any pain he experiences after a dive, because pain in the joints is a symptom of decompression sickness ("the bends"). Plaintiff's chronic pain would make it difficult, *1375 if not impossible, for him to differentiate whether any pain he might suffer after a dive was due to decompression sickness or to his previous ankle injury.
After learning he could not return to diving, plaintiff sought employment in the St. Louis area. He applied for jobs as a refinery worker, as a driver and as a maintenance man, but received no offers. In June of 1985, he started a produce business in partnership with his sister. At the time of trial in March, 1988, plaintiff was drawing a salary of $80.00 per week from the business.
At trial, Mr. Bobby Agee, a diving consultant who testified on plaintiff's behalf, estimated the average annual salary for a new diver just getting started in 1984 was $35,000.00 to $40,000.00. However, he also acknowledged that "I think everybody knows that the industry is not as busy as it was ... the new divers coming out of school may not get as much as they did before ...".
Defendants objected to Agee's testimony on the basis that "evidence of an average wage for the filed [sic] is not relevant where there has been no foundation laid showing that this plaintiff was an average diver, or that this plaintiff would have had an average amount of work available ...". The trial court overruled the objection on the basis that the factors pointed out by defendants should go to the weight of the testimony, which was to be determined by the jury, rather than to its admissibility. Whether evidence is relevant is a matter within the sound discretion of the trial court, which will not be disturbed in the absence of clear abuse. Citizens Bank & Trust v. Consol. Terminal, 460 So.2d 663 (La.App. 1st Cir.1984). We do not find the trial court abused its discretion in this case, agreeing that, under the circumstances, particularly the fact that plaintiff did not have an established earnings record as a diver, defendants' objections should go to the weight of the evidence at issue.
Plaintiff also presented the testimony of Dr. George Rice, an economist. Dr. Rice based his calculations of lost wages, past and future, on an annual salary of $35,000.00 and $40,000.00 respectively, and a work life expectancy of 30.4 years. In making his estimates, Dr. Rice assumed plaintiff would be able to earn only minimum wage. Based on these factors, Dr. Rice estimated the present value of plaintiff's past and future earnings loss was $671,000.00 based on a $35,000.00 annual salary, and $787,000 based on a $40,000.00 annual salary.
The jury obviously rejected these figures in awarding plaintiff $450,000.00 for this item of damages. We find no abuse of discretion.

GENERAL DAMAGES
In an answer to defendants' appeal, plaintiff contends the amount of general damages awarded by the jury was inadequate.
It is well-settled that a trier-of-fact is granted much discretion in awarding general damages and its determination will not be disturbed absent a clear abuse of that discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Bauer v. White, 532 So.2d 506 (La.App. 1st Cir.1988). The function of an appellate court in reviewing a damage award is not to decide what it considers an appropriate award, but rather only to review the exercise of the trier-of-fact's discretion. Landry v. State Farm Ins. Co. Before an award of general damage may be questioned as either inadequate or excessive, the reviewing court must first look to the individual circumstances of a particular case to determine whether the award was a clear abuse of the trier-of-fact's discretion. Id. It is only after a determination of abuse has been made, that any resort to prior awards is appropriate. Reck.
Following the accident in question, plaintiff was admitted to Lakewood Hospital, where he remained for approximately 4 days. Surgery was performed the next day to insert two steel pins into his ankle. He had to wear a cast and walk on crutches for months afterward. The record establishes plaintiff will probably suffer permanently from some pain and discomfort in his ankle. There is a possibility he may have to have surgery in the future to remove the steel pins or for fusion of the *1376 ankle. The medical evidence indicates plaintiff has experienced some traumatic arthritis in his ankle. The permanent impairment of his ankle was set at 50 percent. While plaintiff's injury precludes him from participating in some of his former activities, he can still take part in many activities, including camping and canoeing, which he has done since the accident.
The jury awarded plaintiff a total of $95,000.00 in general damages, consisting of $75,000.00 for past and future pain and suffering (mental and physical) and $20,000.00 for past and future disability. After careful review of the facts and circumstances of plaintiff's injury, we are unable to say these awards are a clear abuse of the jury's much discretion.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
LeBLANC, Judge, concurs in part and dissents in part.
I dissent from that part of the majority opinion which affirms the award for future lost earnings. I do believe that award is excessive.
NOTES
[1] This total is for the approximately nine month period plaintiff worked for Continental that year. During the first three months of 1982, he was still in diving school.