PLOTKIN, Judge.
Plaintiffs, Sally Breaux and her husband Michael Breaux, appeal a jury verdict holding the plaintiffs and the defendants each 50 percent at fault for causing an accident which resulted in injuries to Ms. Breaux. The plaintiffs also appeal the damage award of $200, saying it is insufficient to compensate Ms. Breaux for her injuries. Finally, the Breauxs appeal the trial court’s rejection of Mr. Breaux’s claim for loss of consortium.
The Breauxs filed suit for personal injuries, loss of consortium, and medical expenses against Janie Larkin, the defendant driver; her insurer, State Farm Insurance Co.; Vivian Manis, the vehicle owner; and their own uninsured/underinsured (UM) insurance carrier, USAA Insurance Co. By consent judgment, plaintiff’s action against Vivian Manis was dismissed.
Following a trial on the merits, the jury found Ms. Breaux and Ms. Larkin equally responsible for causing the accident and awarded Breaux $200 in general damages, which was reduced to $100 for her 50 percent comparative negligence. Mr. Breaux’s loss of consortium claim was rejected. jaFAULT OF THE PARTIES
The accident occurred on October 4, 1991 at approximately 10:55 a.m., on the Interstate 10 East access road, just east of Clearview Parkway in Metairie. At the time of the accident, Ms. Breaux was driving her vehicle on the access road with the intention of merging onto I — 10. She had been stopped for 30 to 60 seconds in obedience to a yield sign, waiting for a traffic opening, when her vehicle was struck from the rear. The force of the impact knocked the ashtray out of the dash board and the radiator from its mounts.
Ms. Larkin testified that she was behind the Breaux vehicle when it stopped at the yield sign. She stopped her car until she saw the Breaux vehicle moving forward. Ms. Larkin then looked to the rear and saw an opening in the I — 10 traffic, at which time she started accelerating forward at a speed of 10 to 12 mph, before looking ahead. After proceeding forward, she discovered that the Breaux vehicle was stopped, but rear-ended the forward car before she could stop.
*1315 LSA-R.S. 32:81 imposes a duty on a motorist not to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicle and traffic upon and the condition of the highway. For the strong policy reason of consistency and predictability, Louisiana courts have uniformly held that a following motorist in a rear-end collision is presumed to have breached this duty, and hence, is negligent. Mart . Hill,v 505 So.2d 1120,1123 (La.1987). Therefore, a heavy duty is imposed upon the operator of a following vehicle to keep his car under control and to observe the forward vehicle and follow it at a safe and prudent distance. The motorist has a duty to maintain a careful lookout, observe any obstructions present, and exercise care to avoid them. Ly v. State Department of Public Safety, 633 So.2d 197 (La.App. 1st Cir.1993).
Fault allocations are factual findings which generally cannot be overturned in the absence of manifest error. In reviewing the trial court’s factual findings, an appellate court utilizes a manifest error — clearly wrong standard. Stobart v. State DOTD, 617 So.2d 880 (La.1993); and Rosell v. Esco, 549 So.2d 840 (La.1989).
In this case, the jury was clearly wrong in finding Ms. Breaux and Ms. Larkin each 50 percent at fault in causing the accident. Ms. Breaux testified that she was rear-ended Iswhile stopped at a yield sign. Ms. Larkin confessed that, believing that Ms. Breaux had moved forward, she accelerated ahead, while looking to her rear. Therefore, Ms. Larkin negligently failed to maintain a careful lookout ahead and observe that the Breaux vehicle was stopped, a fact which was readily apparent when she proceeded forward. We find that the sole cause of the accident was Ms. Larkin’s negligence; accordingly, we assess 100 percent of the fault for causing the accident to Ms. Larkin and the other defendants.
QUANTUM
The plaintiffs also claim that the $200 quantum award is inadequate.
Ms. Breaux suffered with diabetes prior to the accident, but enjoyed good health in all other respects. The parties stipulated that her internist, Dr. R. James Mahr, would testify that she never complained of neck or hand injuries prior to October 4, 1991, and that he treated her solely for her diabetic condition.
Following the accident, that evening, Ms. Breaux experienced headaches and general stiffness. She was sore the next day. Thereafter, her condition worsened as she began to suffer from acute headaches, blurred vision, and stiffness in the neck and upper shoulder. She contacted Dr. Mahr, who referred her to Dr. Bernard Manale, who examined her on October 21, 1991. He diagnosed her injuries as a cervical sprain and recommended physical therapy and pain-relieving medications. However, Ms. Breaux did not undergo physical therapy because she experienced a diabetic crisis.
Ms. Breaux returned to Dr. Manale on February 17, 1992, stating that she was still experiencing neck, shoulder and headache pain. Dr. Manale’s examinations revealed muscle spasm and restricted cervical range of motion. He ordered an MRI test, which revealed, on March 14,1992, a posterior inferior fissure herniation at C5-6 and a small disc protrusion between C4-5. Additionally, Dr. Manale referred Breaux to Dr. Gerald Burns, an expert in physical rehabilitation. On March 4, 1993, Dr. Burns conducted both a nerve root study and an electromyogram (EMG).
The tests confirmed that Ms. Breaux had bilateral carpal tunnel syndrome; the suggestion of a C-5 or C-6 nerve root lesion was also found. She returned to Dr. Manale uon May 4,1992 and June 29,1992, when, for the first time, she complained of subjective weakness and tingling in her hands and arms. She noted also that she dropped objects. Her final visit was October 12, 1992. After extensive conservative physical therapy, which failed to relieve her symptoms, Dr. Manale discussed the option of spinal surgery. Ms. Breaux testified that she intended to delay the surgery as long as possible, but that the pain was becoming unbearable and that she believed that she would have to undergo surgery soon.
*1316 Dr. Manale testified that Ms. Breaux suffers from bilateral carpal tunnel syndrome. Ms. Breaux received five injections of cortisone, an anti-inflammatory hormone, into the carpal tunnel of both wrists in an effort to reduce the swelling in the carpal tunnel that was causing constriction of the nerve. Dr. Manale recommends separate surgeries for each wrist. Dr. Manale concluded that Ms. Breaux’s injuries were causally connected to the October 4, 1991 accident.
Dr. Manale testified that his fee for the neck fusion would be approximately $6,000 and that it would require a three- to five-day stay in the hospital, which would cost $10,000 to $20,000. Further, the surgery for Breaux’s carpal tunnel syndrome would be done on an outpatient basis and would cost about $2,000 for each hand.
Dr. Burns opined that bilateral carpal tunnel syndrome usually manifests in a week or so following trauma and that the outside range for appearance of the problem was four to five months. He testified that the symptoms of carpal tunnel syndrome are numbness and tingling in the fingers; pain is not a prominent symptom. He stated that bilateral carpal tunnel syndrome is an inherited condition which can be exacerbated by trauma and also can be related to diabetes. However, Dr. Manale testified that, although diabetes can affect the peripheral nerves and cause carpal tunnel syndrome, the picture produced on an EMG is different for that type of syndrome than for carpal tunnel syndrome caused by trauma. In a diabetes-induced carpal tunnel syndrome, the test produces finding of polyneuropathy, which were not present in Ms. Breaux’s tests.
The defendants called Dr. Robert Steiner, who was accepted by the court as an expert in orthopedic surgery. Dr. Steiner first who examined Ms. Breaux, on request of the defendants, on December 1,1992. That examination revealed restricted movement against Jjjthe normal range when Ms. Breaux turned her head from right to left, but no muscle spasm. Dr. Steiner stated that Breaux’s MRI revealed disc protrusion and minimal posterior spurring at the C4-5 and C5-6 disc levels. He testified that this was characteristic of degenerative cervical disc disease and that, in his opinion, the spurring was present before the accident. Dr. Steiner stated that his conclusions were predicated on the absence of physical findings of nerve root impingement, nerve root irritation, or neurological deficits. He found that Ms. Breaux did not have any neurological deficit and that her symptoms were not caused by the accident of October 4, 1991. However, Dr. Steiner’s opinion was formulated without the benefit of the nerve root conduction study or the EMG.
In a personal injury suit, the plaintiff must prove causation by a preponderance of evidence. The plaintiff is aided in his burden of proof by the following presumption:
[A] claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Dabog v. Deris, 625 So.2d 492, 494 (La.1993), citing Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
Additionally, a defendant takes a victim as he finds him “[a]nd regardless of what problems that he (she) had before, if you aggravate a pre-existing condition, you’re responsible if you cause it for the extent of the aggravation.” Feyembend v. Dept. of Wildlife and Fisheries, 544 So.2d 577, 583 (La.App. 1st Cir.1989).
The plaintiff claims that the trial court erred legally by failing to apply the presumption of causation. She contends that, if the presumption had been applied, the jury would have found that the accident caused her neck and wrist injuries.
Housley leaves no uncertainty that the presumption is applicable to personal injury cases in which the medical evidence shows there is a reasonable possibility of a causal connection between the accident and the medical condition. In Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740, 745 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989), the court stated that when two *1317 conditions are met — (1) good health prior to the accident, and (2) medical testimony showing a reasonable possibility that the accident caused Isthe injury — the plaintiff has established a prima facie case. Defendants must then rebut the prima facie case by showing some other particular incident could have caused the injury. If there is no rebuttal, the plaintiff has proven his case.
The parties stipulated to the fact that, other than her diabetes, Ms. Breaux enjoyed good health prior to the accident; thus, Ms. Breaux met the burden of proving the first requirement of the Wisner test. In order to meet the second requirement, Ms. Breaux was required to prove a reasonable possibility that the accident caused the neck and wrist injuries. Proof of this requirement is problematic.
We have reviewed the record and conclude that the evidence preponderates in favor of Mrs. Breaux that she sustained a cervical injury. We are convinced that she sustained a serious cervical strain and therefore find the jury finding manifestly erroneous in that regard. However, we cannot say that the jury was manifestly erroneous when it found that the accident did not cause nerve injuries to Ms. Breaux’s neck and extremities.
Ms. Breaux was free of neck, shoulder and extremity pain prior to the accident. Since the accident, she has complained of neck pain. Dr. Manale found objective evidence of injury, namely muscle spasm and limited range of neck motion. The nerve root study and EMG “suggest” a C-5 and C-6 nerve root lesion. The MRI indicates the presence of a posteria inferior fissure herniation at C-5 and a small disc protrusion at C-4. However, the defendant’s expert witness, Dr. Steiner, who did not have the benefit of the EMG and nerve study, concluded that Ms. Breaux’s complaints were caused by a preexisting condition and not the accident.
The main conflict in the evidence centered around the question of whether the plaintiff has a ruptured disc, a bulging disc, and bilateral carpal tunnel syndrome that needs surgical correction or whether she simply has a pre-accident condition which does not require surgery. The experts gave different opinions. The trial court gave the jury instructions as to the weight to be given to the testimony of treating physicians, as opposed to the weight to be given to the testimony of a physician who examined a patient on only one occasion for the purpose of evaluation. Dr. Steiner did not testify that Mrs. Breaux did not sustain a cervical strain.
JjWe must assume that the jury believed that the plaintiff does not have ruptured cervical or bulging disc, or bilateral carpal tunnel syndrome caused by the accident, based on Dr. Steiner’s testimony. We find ample support for this conclusion in the record. Ms. Breaux’s infrequent medical visits, her failure to follow the treatment recommended by her treating physicians, and her failure to report her carpal tunnel syndrome symptoms until June 29, 1992, all justify the jury’s rejection of her claim.
Therefore, we are left with a clearly proven cervical sprain. When an appellate court finds that the lower court abused its discretion, the appellate court may only raise or lower the award to the highest (or lowest) level which is within the discretion of the court. Coco v. Winston Industries, 341 So.2d 332 (La.1977); Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). After reviewing previous similar awards, we award Ms. Breaux the sum of $15,000 general damages plus her past medical expenses of $4,356.19[1], with legal interest from the date of judicial demand.
We affirm the judgment rejecting Mr. Breaux’s loss of consortium claim.
CONCLUSION
Accordingly, the trial court judgment assigning 50 percent of the liability to Ms. Breaux is reversed. The judgment is therefore amended to assign 100 percent of the liability for causing the accident to Ms. Lar-kin. The judgment is further amended to increase Ms. Breaux’s award from $200 to *1318 $19,356.19. In all other respects, the judgment is affirmed.

REVERSED IN PART; AMENDED; AS AMENDED, AFFIRMED IN PART.

. Since we are unable to separate which of Ms. Breaux’s medical expenses are attributed to the cervical sprain and which are attributed to the other injuries she claimed, we are awarding Ms. Breaux all of the medical expenses she claimed.