766 So.2d 729 (2000)
Margie K. WIMBERLY, Plaintiff-Appellant,
v.
McCOY TREE SURGERY CO., et al., Defendants-Appellees.
No. 33,761-CA.
Court of Appeal of Louisiana, Second Circuit.
August 25, 2000.
*731 James E. Franklin, Jr., Shreveport, Counsel for Appellant.
Mayer, Smith & Roberts, L.L.P. by Ben Marshall, Jr., Shreveport, Counsel for Appellees.
Ungarino & Eckert, L.L.C., Metairie, Counsel for Defendants/Appellees, American Deposit Insurance Company and Rebecca Shepard.
Before GASKINS, PEATROSS and KOSTELKA, JJ.
PEATROSS, J.
In this tort suit, Plaintiff, Margie K. Wimberly, appeals the amount of damages awarded to her, the assessment of liability among the Defendants and the denial of underinsured motorist ("UM") coverage. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL HISTORY
On November 12, 1997, at approximately 10:30 a.m., Ms. Wimberly was riding as a passenger in a vehicle owned and operated by her daughter, Defendant Rebecca Shepherd. It had been raining heavily earlier in the morning, but there was only a light mist falling as Ms. Shepherd was driving in the westbound lane of Sligo Road. Sligo Road has a posted speed limit of 55 miles per hour.
At that time, a truck and chipper (herein collectively referred to as "the McCoy vehicle") owned by McCoy Tree Surgery Company ("McCoy") were parked partially in the westbound lane and partially on the adjoining shoulder of Sligo Road. Sligo Road is straight for at least 200 feet east of where the McCoy vehicle was parked. The truck was equipped with a lift bucket to allow for the cutting of higher branches. It was necessary for the McCoy employees to park the McCoy vehicle partially in the travel portion of the westbound lane for stability. The shoulder sloped into a ditch and the ground was soft from the recent rain, all of which would have caused the McCoy vehicle to lean, making the use of the lift bucket dangerous. There were safety cones and "Men Working" signs present, but the number of cones, their distance from the McCoy vehicle and the distance of the signs from the McCoy vehicle are in dispute.
Ms. Shepherd's vehicle collided with the left rear corner of the chipper. Ms. Shepherd testified that she was only 20 to 30 feet from the McCoy vehicle when she noticed it. She attempted to move into the eastbound lane, but was met by an oncoming vehicle which was either stopped or *732 moving slowly in the eastbound lane. On seeing the oncoming vehicle, Ms. Shepherd testified that she "panicked," slammed on her brakes, veered back into the westbound lane and struck the left rear corner of the chipper. Ms. Wimberly sustained a broken wrist and contusions and lacerations to her forehead as a result of the collision.
On February 20, 1998, Ms. Wimberly filed suit against McCoy; its insurer, Reliance National Indemnity Company ("Reliance"); Ms. Shepherd; and American Deposit Insurance Company ("American"), in its capacity as Ms. Shepherd's insurer and in its capacity as her insurer for the purpose of UM coverage. The matter was submitted on depositions with argument to be held at a later date. The trial court, however, rendered a written opinion on June 22, 1999, without oral argument. In its reasons for judgment, the trial court found that the accident was caused solely by the negligence of Ms. Shepherd in driving her vehicle at an excessive speed and awarded Ms. Wimberly the following damages:

1) Medical Specials $10,528.28
2) Lost Wages 5,761.53
3) General Damages 11,000.00
 ___________
 Total $27,289.81

Costs were initially assessed against Ms. Shepherd and American. At a later hearing on Ms. Wimberly's motion to tax costs, those costs which she requested were allowed, but the proportion of costs to be paid by each party was changed to 75 percent to Ms. Shepherd and American and 25 percent to Ms. Wimberly.
The June 22, 1999 opinion did not address the issue of Ms. Wimberly's UM claim and penalties and attorney fees so the trial court requested supplemental briefs. The trial court rendered a supplemental opinion on August 29, 1999, rejecting Ms. Wimberly's aforementioned claims. Ms. Wimberly appeals the allocation of fault, quantum, the rejection of her UM claim and associated penalties and attorney fees and the allocation of costs.

DISCUSSION

Liability
Ms. Wimberly asserts as her first assignment of error that the trial court erred in finding that the accident was proximately caused by Ms. Shepherd and failing to find that McCoy was negligent. Specifically, Ms. Wimberly asserts that McCoy violated La. R.S. 32:141 and 32:296. We find no merit to this argument.
La. R.S. 32:296 provides, in pertinent part,:
A. No person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder when such stopping or parking on the highway shoulder shall obstruct the flow of traffic or is a hazard to public safety, unless such stopping, parking, or standing is made necessary by an emergency, except:
* * *
(2) By any public utility personnel or public utility equipment engaged in the operation of the utility business, public vehicles owned by public bodies which are engaged in the conduct of official business, or privately-owned vehicles which are engaged in services authorized by the local governing authority. (Emphasis ours.)
This statute is inapplicable to the facts of the case sub judice because the McCoy vehicle was never left unattended prior to the accident See Sumner v. Sumner, 95-677 (La.App. 3d Cir.11/8/95), 664 So.2d 718, writ denied, 95-2919 (La.2/9/96), 667 So.2d 531.
Joe Deleon, a foreman, and Xavier Edwards, a trimmer, comprised the tree cutting crew at the site on Sligo Road. Both McCoy employees were near the McCoy vehicle at the time of the accident. Mr. Deleon testified that he was standing to the rear of the chipper with his back to the road immediately before the impact of Ms. Shepherd's truck. In fact, he stated that he heard the sound of Ms. Shepherd's tires *733 "squalling" followed by a "thump," which he presumed was Ms. Shepherd's truck hitting the safety cones. It was at this point that Mr. Deleon ran away from the chipper toward the ditch. Mr. Edwards was standing just to the north of the truck picking up trimmed branches when the impact occurred.
In addition, pursuant to La. R.S. 32:296 A(2), McCoy was working under contract with Southwestern Electric and Power Company ("SWEPCO") clearing power lines at the time of the accident. As the agent of a public utility, McCoy was not in violation of La. R.S. 32:296.
La. R.S. 32:141 states, in pertinent part, as follows:
Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
A motorist may generally assume that the road is safe for travel and he/she is not required to anticipate unexpected obstructions in his/her lane of traffic which are, under the circumstances, difficult to discover. U.S. F. & G. Co. v. State, Through the Department of Highways, 339 So.2d 780 (La.1976); Parker v. Continental Insurance Co., 341 So.2d 593 (La.App. 2d Cir.1977). A motorist on a public highway has a duty, however, to maintain a careful lookout. Chaisson v. J. Ray McDermott & Co., 324 So.2d 844 (La.App. 1st Cir.1975), writ denied, 328 So.2d 86 (La.1976).
In deciding whether a motorist who strikes a stationary vehicle obstructing his/ her lane should have observed the vehicle in time to avoid a collision, there are no hard and fast rules. In making this determination, all of the facts and circumstances surrounding a particular case must be considered, including the locality of the accident, the lighting conditions, the respective positions of the vehicles, visibility and the presence and operation of lighting or warning equipment. Ramsey v. Langston, 140 So.2d 775 (La.App. 2d Cir.1962). The standard to be applied is one of reasonableness. Lynch v. Fisher, 41 So.2d 692 (La.App. 2d Cir.1949); Ramsey, supra; McIntyre v. Saunders, 554 So.2d 1371 (La. App. 1st Cir.1989), writ denied, 558 So.2d 583 (La.1990); Chaisson, supra.
As stated previously, in the case sub judice it was not practical for the McCoy employees to park the McCoy vehicle completely off of the travel portion of Sligo Road. The trial court found, and we agree, that the McCoy vehicle extended only two feet onto the travel portion of Sligo Road, leaving an unobstructed passage for other vehicles to get around it. Further evidence indicates that there was a clear view of the McCoy vehicle for at least 200 feet, in accordance with La. R.S. 32:141. By implication of the ruling, the trial court found that McCoy had acted reasonably under the circumstances.
Ms. Wimberly testified in her deposition that she did not recall seeing a bright orange "Men Working" sign on the north side of the westbound lane, some distance before they reached the McCoy vehicle. Ms. Shepherd testified that she did not see such a sign and, had there been one, she would have seen it. Officer Pete Smith of the Bossier Parish Police Department, who investigated the accident, testified, however, that there was definitely a "Men Working" sign on the shoulder of the westbound lane in which Ms. Shepherd was traveling. In his opinion, the sign was about 100 feet east of the McCoy vehicle, although he did not take any measurements. Mr. Stanley Hummer, an independent bystander who was observing the *734 McCoy employees from the field to the north of the McCoy vehicle, testified that he also saw a "Men Working" sign in the westbound lane. In his opinion, the sign was 100 to 120 feet from the McCoy vehicle. Mr. Hummer also did not take any measurements, but testified that he estimated the distance by counting the fence posts he could see from the McCoy vehicle to the sign. He stated that, to his knowledge, the posts were each about 10 feet apart. Also of great significance is Mr. Hummer's testimony that, in his opinion, Ms. Shepherd was traveling at an excessive rate of speed for the 55 mile per hour zone.
Mr. Deleon and Mr. Edwards both testified that they personally put the "Men Working" signs out in both the east and westbound lanes. These signs were placed in accordance with the McCoy safety guidelines card which Mr. Deleon was given by McCoy. The card states that, in a 55 mile per hour speed zone, "Men Working" signs should be placed between 360 and 550 feet from the vehicle in either direction. Mr. Deleon testified that they estimated the distance by pacing it off and the sign to the east of the McCoy vehicle, which was placed to face westbound traffic, was about 400 feet from the McCoy vehicle. Mr. Edwards testified that the sign was about 200 feet from the McCoy vehicle.
Ferlon Brown, who was a general foreman with McCoy and in charge of Mr. Deleon's crew, and Dan Salter, who was also a general foreman with McCoy, arrived separately after the accident to survey the scene and take photographs[1]. Mr. Brown testified that he arrived just before the police arrived and was able to see exactly how the safety cones, McCoy vehicle and signs were set up before the police asked them to be removed from the road. Mr. Brown and Mr. Salter testified that, although the truck and safety cones had been moved at the request of Officer Smith, the "Men Working" signs remained. With the assistance of Mr. Deleon and Mr. Edwards, the cones were replaced in the area where the McCoy vehicle was estimated to have been parked and Mr. Salter and Mr. Brown measured the distance from where the most easterly cone was placed to the west-facing "Men Working" sign, finding it to be approximately 401 feet.[2]
There are also discrepancies in the testimony concerning the number and spacing of the safety cones. Ms. Wimberly testified in her deposition that she saw five or six safety cones which were placed close to the McCoy vehicle. She admitted that she could not see to the west of the vehicle and that there may have been more safety cones placed at the front of the McCoy vehicle. Ms. Shepherd stated that she only saw two safety cones which were placed right next to the back of the McCoy vehicle on its east side, one right behind the other. Officer Smith testified that he remembered there being safety cones placed around the McCoy vehicle, but does not remember the number or placement of those cones. Mr. Hummer testified that his view of the cones was mostly blocked by the McCoy vehicle. He could see one cone which was approximately 20 to 25 feet behind the McCoy vehicle and there may have been as many as seven other cones which he could not see. Mr. Deleon remembers there being eight or nine cones on the truck, all of which were put out. Mr. Edwards remembered there being eight to ten cones. Mr. Brown testified, however, that all of the McCoy trucks were equipped with eight safety cones and two signs.
The photographs and measurements of the reconstructed scene show that the area enclosed by the eight safety cones was 135 *735 feet from the westerly most cone to the easterly most cone. It was estimated that the westerly most cone was approximately 63 feet west of the rear of the McCoy vehicle, which was 42 feet long. To Mr. Deleon's and Mr. Edward's recollection, there were three cones to the rear or east of the McCoy vehicle, three along the sideone at each tire, and two in the front or west of the vehicle.
Ms. Wimberly complains that the McCoy safety card depicts 19 cones placed around a stopped vehicle; and, therefore, McCoy violated its own safety guidelines by not having enough cones. Mr. Brown testified that the pictorial portion of the card is merely a demonstration or suggestion of how cones should be placed. The trial court found no merit to this complaint. We agree.
The trial court's findings of fact may not be set aside on appeal in the absence of manifest error or unless clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Smith v. Brookshire Grocery Co., 30,184 (La.App.2d Cir.1/23/98), 706 So.2d 643. This is true even in those instances where a case is submitted on written documents such as reports, statements and depositions. Williams v. Jackson Parish Hospital, 31,492 (La.App.2d Cir.1/13/99), 729 So.2d 620.
Reversal of findings of fact on appeal requires that (1) the appellate court find from the record that no reasonable factual basis exists for the trial court's finding and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly erroneous. Id. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Elrod v. Wal-Mart Stores, Inc., 31,852 (La.App.2d Cir.5/7/99), 737 So.2d 208.
On this record, we cannot say that the trial court committed manifest error in its finding that Ms. Shepherd was driving at an excessive speed for the conditions and was the sole cause of the accident. McCoy acted reasonably in its efforts to warn motorists of the presence of an obstruction on the roadway. Testimony indicates that there were signs present which warned approaching motorists that it was necessary to proceed with caution as there was work being performed on or near the roadway ahead. In addition, there were safety cones present. It is apparent from the trial court's ruling that McCoy's safety measures were found to be reasonable under the circumstances.

Quantum
In her second assignment of error, Ms. Wimberly complains that the trial court erred by awarding her only $11,000 in general damages. We find the award to be adequate to compensate Ms. Wimberly for her injuries.
A trier of fact has great discretion in fixing general damages. A trial court's award of general damages should not be overturned by a reviewing court absent an abuse of discretion. Coffin v. Board of Supervisors of Louisiana State University, 620 So.2d 1354 (La.App. 2d Cir.1993).
General damages involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification or physical enjoyment or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Odom v. Claiborne Electric Co-op., Inc., 623 So.2d 217 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1171 (La.1993). When damages are insusceptible of precise measurement, much discretion is left to the trial court for the reasonable assessment of these damages. La. C.C. art.1999; Spurrell v. Ivey, 25,359 (La.App.2d Cir.1/25/94), 630 So.2d 1378. An appellate court should rarely disturb an award for general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), U.S. cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Spurrell v. Ivey, supra. Only if an *736 award is first found to be inadequate or excessive on the facts of the particular case may the appellate court refer to the awards in "similar" cases. Greene v. Fox Crossing, Inc., 32,774 (La.App.2d Cir.3/1/00), 754 So.2d 339, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1108; Spurrell v. Ivey, supra.
Our review of the facts of this case does not reveal any articulable reason why the general damage award is an abuse of the trial court's discretion. We do not find the award to be so low as to be abusively low.
Ms. Wimberly suffered a transverse fracture of her right distal radius with no displacement. Surgery was, therefore, not required and Ms. Wimberly was simply placed in a long-arm cast which was eventually replaced with a short-arm cast. The fracture healed in seven weeks and Ms. Wimberly required physical therapy for strengthening of her right wrist for approximately five weeks. Her activities were not restricted and it was felt by her physician and physical therapist that she could return to work as a hair dresser once she was released. Ms. Wimberly complains that she was not able to return immediately to work, but she was compensated for this loss with an award for lost wages. Ms. Wimberly also sustained minor contusions and abrasions to the right side of her face and forehead which caused pain and swelling for a few weeks, but left no visible scarring, although Ms. Wimberly states there is a scar over her right eye.[3] We find that the evidence amply supports the trial court's award of $11,000 in general damages and will not disturb it given the trial court's much discretion.
Those cases cited by Ms. Wimberly in support of her position involve injuries which are far more serious than those she sustained and are not persuasive to show any abuse of discretion. The cases involve multiple severe injuries, the necessity for surgical intervention or both, none of which was suffered by Ms. Wimberly.[4]

UM Coverage
Next, Ms. Wimberly complains that the trial court erred in finding that American properly pled, as an affirmative defense, that she was not entitled to UM coverage due to a policy exception. We disagree.
An affirmative defense is one that raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating the plaintiff's demand on its merits. Webster v. Rushing, 316 So.2d 111 (La.1975); Campbell v. Elcom of Louisiana, Inc., 31,693 (La. App.2d Cir.2/24/99), 728 So.2d 1035. The new matter raised must be one not raised by plaintiff's petition. Campbell, supra.
In paragraph 20 of her petition, Ms. Wimberly alleges that American issued to her a policy of insurance which defines Ms. Shepherd as an underinsured motorist and entitles Ms. Wimberly to underinsured motorist coverage.[5] In its answer, *737 American specifically denies the allegations in paragraph 20.[6]
American contends that by specifically denying that Ms. Wimberly is entitled to such coverage in its answer, the issue was properly before the court. Under these circumstances, we agree. The definition of underinsured motorist is a general part of the policy referred to by plaintiff and not a special exclusion that must be asserted by affirmative defense. (Emphasis ours.) By denying that Ms. Wimberly is entitled to coverage as defined by the policy, American did not raise any new issues, but merely answered the allegation as set forth by Ms. Wimberly. This is not an affirmative defense.
Ms. Wimberly cites several cases which she argues are dispositve of this issue.[7] The cases cited, however, refer to the use of policy exclusions specifically, which must be raised as affirmative defenses. Further, in Monju v. Continental Cas. Company, 487 So.2d 729 (La.App. 5th Cir. 1986), which Ms. Wimberly cites, the trial court makes specific note of the fact that the clause which denies coverage to the plaintiffs is not an exclusion, alluding to the conclusion that only actual exclusions must be affirmatively pled. In the case sub judice, Ms. Wimberly and American are both referring to underinsured motorist coverage as it is defined in the policy, not any special exclusions that might apply. We find, therefore, that the issue of insurance coverage under the policy issued by American to Ms. Wimberly was properly before the court.
This brings us to Ms. Wimberly's next assignment of error in which she complains that the trial court erred in failing to find that there was insurance coverage extended to her under the underinsured motorist provision of the policy. We also find no merit to this assignment of error.
When the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Central Louisiana Electric Co. v. Westinghouse, 579 So.2d 981 (La.1991); Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988); Krider v. Dixon, 609 So.2d 1089 (La.App. 2d Cir.1992). Absent a conflict with law or public policy, insurers are entitled to limit their liability and impose reasonable conditions upon the obligations assumed in a given policy. Krider, supra; Hartford Accident and Indemnity Co. v. Joe Dean Contractors, Inc., 584 So.2d 1226 (La.App. 2d Cir.1991).
The policy of indemnity insurance issued to Ms. Wimberly by American defines an underinsured motor vehicle at page 6, part C, section 4, which is applicable to Ms. Shepherd. Section 4(a) sets forth an exception to that definition and states that a vehicle owned by any relative is not an underinsured motor vehicle under the terms of the policy. (Emphasis ours.) We find this language to be unambiguous and an imposition of a reasonable condition or limit of liability. Ms. Wimberly, as a relative of Ms. Shepherd, is not entitled to recover any portion of this judgment from *738 American under the terms of the underinsured motorist coverage of her insurance policy.

Costs
Finally, Ms. Wimberly complains that the trial court committed error when the assessment of costs was changed from 100 percent to American, to 25 percent to Ms. Wimberly and 75 percent to American. Ms. Wimberly argues that the trial court did not have the authority to amend the judgment in such a manner.
We agree that, once a judgment has been rendered, the trial court can only amend it for purposes of altering phraseology or correcting a calculation, but not to change its substance. La. C.C.P. art.1951. In the case sub judice, the judgment was not rendered until after the hearing on Ms. Wimberly's motion to tax costs; and, in that judgment, the trial court made its 25/75 allocation. Therefore, with the trial court's allocation of costs not being previously reduced to a judgment, the allocation could be amended until then.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed
AFFIRMED.
NOTES
[1] Mr. Brown called Mr. Salter for his assistance in photographing the scene because Mr. Salter was known as an amateur photographer and he usually had a camera with him.
[2] The cone was measured to be 63 feet from the rear of the McCoy vehicle.
[3] During Ms. Wimberly's deposition, counsel for McCoy was unable to see the scar to which Ms. Wimberly was referring.
[4] Hundley v. Harper Truck Line, Inc., 28,613 (La.App.2d Cir.9/25/96), 681 So.2d 46; Boddie v. State, 27,313 (La.App.2d Cir.9/27/95), 661 So.2d 617; Wallace v. Slidell Memorial Hospital, 509 So.2d 69 (La.App. 1st Cir.1987); Berry v. State Through Dept. of Health and Human Resources, 625 So.2d 600 (La.App. 3d Cir. 1993), reversed on other grounds, 93-2748 (La.5/23/94), 637 So.2d 412; Derouen v. City of New Iberia, 415 So.2d 596 (La.App. 3d Cir.1982).
[5] Paragraph 20 states:

Plaintiff, MARGIE K. WIMBERLY, alleges that defendants, AMERICAN DEPOSIT INSURANCE COMPANY issued to her a policy of liability insurance which also included coverage for uninsured motorist coverage and underinsured motorist coverage. MARGIE K. WIMBERLY alleges upon information and belief that REBECCA SHEPHERD is an uninsured motorist and/or underinsured motorist as defined in the policy of insurance issued by AMERICAN DEPOSIT INSURANCE COMPANY to MARGIE K. WIMBERLY and MARGIE K. WIMBERLY is entitled to a judgment against AMERICAN DEPOSIT INSURANCE COMPANY for the full sum due under the uninsured and underinsured motorist policy issued by AMERICAN DEPOSIT INSURANCE COMPANY to MARGIE K. WIMBERLY. The refusal of AMERICAN DEPOSIT INSURANCE COMPANY to pay under the provisions of the uninsured motorist policy is arbitrary and capricious and plaintiff shows that she is entitled to recover penalties and attorney fees for the arbitrary and capricious conduct of defendant, AMERICAN DEPOSIT INSURANCE COMPANY in settling this case.
[6] American's answer to Ms. Wimberly's paragraph 20 states:

The allegations of paragraph 20 of plaintiff's original petition are denied.
[7] Nippert v. Baton Rouge Railcar Services, Inc., 526 So.2d 824 (La.App. 1st Cir.1988), writ denied, 530 So.2d 84 (La.1988), 530 So.2d 87 (La.1988) and 530 So.2d 91(La.1988); Pendleton v. Smith, 95-1805 (La.App. 4th Cir.5/8/96), 674 So.2d 434, writ denied, 96-1425 (La.9/13/96), 679 So.2d 107; Monju v. Continental Cas. Company, 487 So.2d 729 (La.App. 5th Cir.1986).