TERRI F. LOVE, Judge.
11 This appeal arises from a personal injury action. The judgment of the trial court granted general and special damages in favor of plaintiff, Carmen Lino, and against the defendants, Elizabeth Yatsu Athmann and Allstate Insurance Company. The defendants appeal.[1] For reasons ascribed below, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At approximately 10:00 p.m. on August 27, 2002, Carmen Lino (“Ms. Lino”) was *890 operating her 1996 Kia automobile in an easterly direction on Airline Highway at its entrance with I — 10. Ms. Lino was traveling on the upslope of Airline Highway before it turns into Tulane Avenue. As she proceeded up the overpass, the lights on her vehicle began to dim and the vehicle shut down. Ms. Lino attempted to restart the vehicle for approximately twenty minutes. She also attempted to call her friend, Mario, who installed a new battery in the vehicle the day before. Ms. Lino did not call 911 or any other emergency assistance. Ms. Lino was unable to turn on the vehicle’s lights or emergency flashers because of the electrical problem. Ms. Lino testified that while she was stalled, many vehicles passed her or went around her without incident.
| aAfter attempting to restart the vehicle, Ms. Lino exited the vehicle and raised the hood. Ms. Lino was standing to the passenger side of her vehicle when a 1997 Toyota Avalon, driven by Elizabeth Yatsu Athmann (“Ms.Athmann”), struck Ms. Lino’s vehicle from the rear. Ms. Lino’s testimony does not indicate the length of time she remained outside of the vehicle before the impact occurred.
Ms. Athmann was traveling east on Airline Highway. Just prior to the accident, Ms. Athmann stopped at a red traffic signal. When the signal turned green, she proceeded straight ahead with the intention of going up the overpass toward Tulane Avenue. Ms. Athmann testified that she was in the same lane as Ms. Lino’s vehicle, which was stalled three to four car lengths ahead. Ms. Athmann explained that she did not see Ms. Lino’s vehicle until it was in front of her. She stated that she tried to brake, swerved to the left, and hit the back corner of Ms. Lino’s vehicle. At that point, she saw Ms. Lino being thrown to the ground. Ms. Athmann further testified she did not notice that the hood was up on Ms. Lino’s vehicle until after the impact. Ms. Athmann confirmed that Ms. Lino’s vehicle did not have lights or emergency flashers. Contrary to Ms. Lino’s statement that the accident scene was well lit, Ms. Athmann testified that some of the streetlights in the area of the accident were dark.
An ambulance transported Ms. Lino from the scene to Charity Hospital. Ms. Lino sustained a fractured elbow and soft tissue injuries.
Ms. Lino filed suit against Ms. Athmann and her insurer, Allstate Insurance Company (“Allstate”), seeking recovery for her personal injuries and property damage.[2] Ms. Athmann and Ms. Lino testified. The trial court rendered a judgment in favor of Ms. Lino and against Ms. Athmann and Allstate. The trial |scourt assessed 90% fault to Ms. Athmann and 10% fault to Ms. Lino. Ms. Lino was awarded general damages in the amount of $40,000, property damage in the amount of $2,949.49, and medical expenses totaling $6,616.25, less 10% for Ms. Lino’s contributory negligence.
Ms. Athmann and Allstate appeal the judgment of the trial court, assigning two errors. First, they assert the trial court erred in assessing only 10% fault to Ms. Lino. Second, they contend the trial court erred in awarding $40,000 in general damages to Ms. Lino. The award for medical expenses and property damage is not at issue in this appeal.[3]

ALLOCATION OF FAULT

As with other factual determinations, the trier of fact is vested with much *891 discretion in allocating fault. Foley v. Entergy La., Inc., 04-1967, p. 3 (La.App. 4 Cir. 2/15/06), 925 So.2d 638, 641. An adjustment in an apportionment of fault will only be made if it is “clearly wrong,” and only “to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion.” Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, 611.
This Court described the very wide latitude afforded the fact finder in allocating comparative fault in Riley v. Reliance Ins. Co., 97-0445 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, 163:
Thus, Clement tells us that the allocation of fault is not an exact science, or the search for one precise ratio. Rather, it is an acceptable range and any allocation by the jury within that range cannot be “clearly wrong.” In Clement, the Supreme Court held that any allocation of fault falling between a ratio of 50/50 and 75/25 would be reasonable. [ /Phis very broad range is illustrative of the analogy referred to in the passage quoted above from Clement, comparing fault and quantum determinations. Mindful that in quantum determinations, Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), affords the factfinder “great, even vast” discretion, the Clement analogy mandates this Court to afford considerable latitude to the trial court in matters of fault allocation.
In comparing the relative fault of the parties, several factors are considered, including: “(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.” Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985).
In written reasons for judgment in the case sub judice, the trial court stated:
In the instant case, Ms. Lino never abandoned her vehicle. Further, she attempted to start her vehicle for approximately 20 minutes without success. She then got out of her car and was attempting to signal oncoming drivers by lifting her hood at the time of the collision. Finally, Ms. Lino was unable to turn on her flashers because the electrical system was totally out due to battery failure.
Ms. Lino also testified that she attempted to phone the mechanic who repaired her car the day before, but was unsuccessful. The only other measure that Ms. Lino could have possibly taken would have been to move to the rear of her car and signal oncoming motorists away from her stalled vehicle.
The Court finds that her actions described above were the actions of a reasonably prudent person in her situation.
The court finds Ms. Lino’s account to be more credible, and after reviewing the evidence and appropriate jurisprudence, especially the principles articulated in Doyle v. McKinney, et al, 732 So.2d 128, the Court finds that Ms. Lino’s fault is to be assessed at 10%.
|BOn appeal, Ms. Athmann and Allstate argue that Ms. Lino should have been found 100%> at fault for violating La. R.S. 32:141, which provides, in part:
A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of *892 the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.
Ms. Athmann and Allstate submit that Ms. Lino took no actions to warn oncoming motorists for an extended period of time as her gray vehicle was stalled at night without lights in a section of roadway in which some streetlights were dark. They further contend that although Ms. Lino had a cell phone, she did not attempt to call 911 for assistance, nor did she call for a tow truck.
In support of their argument, the Ms. Athmann and Allstate site Doyle v. McKinney, 98-1102 (La.App. 4 Cir. 4/7/99), 732 So.2d 128, wherein this Court discussed the responsibility of a driver of a stalled vehicle. In Doyle, Mr. Jones, the driver of the stalled vehicle, left his vehicle for an hour and a half in order to go to his friend’s house to seek assistance. The emergency flashers did not work and the driver made no attempt to warn other motorists. This Court found the driver of |fithe stalled vehicle 75% at fault, finding that Mr. Jones’ actions were not the actions of a prudent person under the circumstances. This Court further determined that Mr. Jones could have flagged oncoming motorists away from his stalled vehicle or he could have called a tow truck as soon as he was able to get to a phone.
Finally, Ms. Athmann and Allstate assert that there was no evidence produced at trial to indicate that Ms. Athmann was operating her vehicle above the speed limit or that she was inattentive. Rather, they submit that the accident would not have occurred but for Ms. Lino’s failure to warn traffic as required by La. R.S. 32:141.
In opposition, Ms. Lino submits that La. R.S. 32:141 does not apply to the case sub judice. Ms. Lino asserts that, pursuant to Section B of the statute, there is no violation or prohibition against stopping on a highway if the vehicle stops because it became disabled or stalled. We agree. The statute indicates that the provisions do not apply to a disabled vehicle if it is impossible to avoid stopping on the main traveled portion of the highway. Furthermore, it was within the discretion of the trial court to analyze the testimony of the witnesses and determine that Ms. Lino did not have an option under La. R.S. 32:141 to move her car out of harms way. Duroncelet v. McLendon, 01-0022, p. 5 (La.App. 4 Cir. 11/14/01), 801 So.2d 1169, 1172.
Whether Ms. Lino acted reasonably under the circumstances involves a factual determination. The trial court distinguished this case from Doyle and made a factual finding that Ms. Lino acted as a reasonably prudent person in her situation and assessed her only 10% fault for the accident. We see no manifest error in this *893 finding, and we will not disturb the trial court’s ruling.
17Regarding Ms. Athmann’s actions, the trial court concluded that Ms. Athmann breached her duty of a following motorist by rear-ending Ms. Lino. The trial comb referenced the duty of a following motorist to maintain a careful lookout, to observe the obstructions present and to exercise caution to avoid them. Breaux v. Larkin, 93-2544 (La.App. 4 Cir. 5/26/94), 637 So.2d 1313, 1315.
The case law documents that Ms. Athmann “had the duty to focus” her “attention to the front to see what was in her path, what might be entering his path or about to enter his path.” Duroncelet, 01-0022, p. 5, 801 So.2d at 1172. “A motorist may generally assume that the road is safe for travel and he/she is not required to anticipate unexpected obstructions in his/ her lane of traffic which are, under the circumstances, difficult to discover.” Wimberly v. McCoy Tree Surgery Co., 33, 761, p. 4 (La.App. 2 Cir. 8/25/00), 766 So.2d 729, 733, citing U.S. Fid. & Chiar. Co. v. State, Through the Dep’t of Highways, 339 So.2d 780 (La.1976). However, a motorist’s duty of reasonable care includes the duty to keep the vehicle under control. Updegraff v. State ex rel Dep’t of Transp. and Dev., 01-1048, p. 8 (La.App. 4 Cir. 10/02/02), 828 So.2d 693, 700. “Further, a motorist has a duty to maintain a proper lookout for hazards, which by the use of ordinary care and observation, he should be able to see in time to avoid running into them.” Id.
The court stated in Wimberly:
In deciding whether a motorist who strikes a stationary vehicle obstructing his/her lane should have observed the vehicle in time to avoid a collision, there are no hard and fast rules. In making this determination, all of the facts and circumstances surrounding a particular case must be considered, including the locality of the accident, the lighting conditions, the respective positions of the vehicles, visibility and the presence and operation of lighting or warning equipment.
Wimberly, 33,761, p. 4, 766 So.2d at 733. Reasonableness is applied as the standard. Id. at 733.
In the case sub judice, Ms. Athmann testified that she was traveling in the same lane as Ms. Lino, and that Ms. Lino’s vehicle was stalled three to four car lengths directly ahead of where Ms. Ath-mann was stopped at a red light. Based on the facts, we cannot say that the trial court erred in finding that Ms. Athmann breached her duty as a motorist to focus her attention to the front to see what was in her path. Accordingly, we do not find that the allocation of 90% fault to Ms. Athmann was clearly wrong.

GENERAL DAMAGES

Ms. Athmann and Allstate next contend that the award of $40,000 in general damages was excessive, considering Ms. Lino sustained a non-displaced fracture of the elbow, which was treated conservatively and did not require a hard cast. In Raines v. Columbia Lakeland Med. Ctr., 05-0243, p. 5 (La.App. 4 Cir. 1/4/06), 923 So.2d 170, 173, this Court discussed the review of general damage awards as follows:
The standard of appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). The Supreme Court addressed the standards governing appellate review of general damage awards in Andrus v. State Farm Mutual Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206. Specifically, the Supreme Court stated: In appel *894 late review of general damage awards, the court must accord much discretion to the trial court judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979). The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Id. Only if the reviewing court determines that the trial court has abused its “much discretion” may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). Because discretion vested in the trial court is “great,” and even vast, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id. Andrus v. State Farm Mutual Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206, 1210.
Reversal of a general damage award requires a showing that the trier of fact abused the great discretion accorded in awarding damages. The award must be so high or so low in proportion to the injury that it “shocks the conscience.” Casbon v. Phillips, 04-1717, p. 6 (La.App. 4 Cir. 2/16/05), 897 So.2d 790, 793, quoting Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
In support of their position that the general damage award was excessive, Ms. Athmann and Allstate cite Nelson v. La. Stadium and Exposition Dist., 01-1764 (La.App. 4 Cir. 11/13/02), 832 So.2d 1043. In Nelson, this Court affirmed an award of $22,500 for a sixty-two year old woman who sustained a non-displaced fracture of her right elbow, with residual pain. Id. Ms. Lino counters that the award is not excessive when considering the soft tissue injuries to her neck and back for which she sought treatment for eight months.
The record before us shows that Ms. Lino was thrown to the ground on impact of the collision. An ambulance transported her to the emergency room where she was treated and released later that night. Ms. Lino sought treatment with orthopedic specialist, Dr. Gordon P. Nutik (“Dr.Nutik”). According to the medical records, Ms. Lino was diagnosed with a non-displaced fracture of the radial head of the right elbow, as well as soft tissue strains of the neck, mid back, right shoulder, and right wrist. Dr. Nutik recommended physical therapy and prescribed Celebrex. Ms. Lino received physical therapy from Premier Medical |inRehab from September 3, 2002, until March 17, 2003. On Ms. Lino’s last recorded visit with Di. Nutik, April 23, 2003, Dr. Nutik prescribed Vioxx and recommended that Ms. Lino undergo an MRI of her shoulder. There is no évidence in the record that the MRI was performed. The record further reflects that Ms. Lino missed six weeks of work as a result of her injuries.
At trial, Ms. Lino testified that her elbow had not healed completely, and that she still experienced pain when she worked. Ms. Lino stated that she continued to take Motrin for pain in her elbow, neck, and back.
Considering the evidence, we find that the general damages awarded to Ms. Lino *895 were not excessive, and that there was no abuse of discretion by the trial court.

DECREE

For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED

. Prior to trial, Lawrence Yatsu, the owner of the vehicle driven by Ms. Athmann, was dismissed as a defendant.

. Ms. Lino stipulated that her damages did not exceed $50,000.

. Ms. Athmann and Allstate stipulated to Ms. Lino's medical expenses and property damages prior to trial.