832 So.2d 1043 (2002)
Paulette NELSON and Watts M. Nelson
v.
LOUISIANA STADIUM AND EXPOSITION DISTRICT, FMG, Inc. and ABC Insurance Company.
No. 2001-CA-1764.
Court of Appeal of Louisiana, Fourth Circuit.
November 13, 2002.
*1045 Michael G. Calogero, Metairie, LA, and John H. Denenea, Jr., Shearman-Denenea, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Rodney A. Seydel, Jr., Brynn M. Baiamonte, Hoffman, Seigel, Seydel, Bienvenu, Centola & Cordes (APLC), New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, and Judge PATRICIA RIVET MURRAY).
STEVEN R. PLOTKIN, Judge.
This appeal involves a premise liability action filed by plaintiff, Paulette Nelson, against defendants, Louisiana Stadium and Exposition District and SMG (collectively "Superdome"), for personal injuries sustained as a result of a slip and fall. For reasons discussed below, we affirm the judgment of the trial court in all respects.
Facts and Proceedings Below
This appeal involves a slip and fall in the parking area of the Louisiana Superdome that occurred on January 7, 2000 at approximately 7:00 pm. The plaintiff and some friends were attending an ice skating show in the arena, and, at the time of the accident, were heading toward the arena. The plaintiff, after ascending some stairs in the parking area of the Superdome, tripped over a small metal black box that was bolted into the concrete floor of the parking area. Plaintiff sustained a fracture of her right arm as a result of the fall.
Specifically, plaintiff testified that they were unfamiliar with the parking area as well as the proper entrance to the arena from the parking area and that they were looking for the path to the arena from the dome. Plaintiff testified that she was ascending the stairs on the right side holding on to the right rail. The plaintiff testified that when she reached the top level of the parking area, she and her group stopped to determine where they were going. Plaintiff, being at the top of the stairs, then attempted to step backwards to allow some people who were behind her to pass. As she backed up, she tripped over the metal box (Plaintiff attempted to testify that she sidestepped over the box, but later admitted that she had backed up).
The metal box over which the plaintiff fell was 1' (length) by 1' (width) by 6" (height). It was located approximately 1 and ½ to 2 feet back from the edge of the top step and approximately 6 inches to the right of the right stair rail. The box was painted black. Superdome official Bryan Brocato testified that, at the time, the box had no utility, but was placed there to accommodate future electrical circuitry or piping. Additionally, Mr. Brocato stated that there were other such boxes similarly situated near stairwells around the parking area of the Superdome. He testified that other boxes were painted yellow and some had three-foot long poles protruding from the tops of the boxes, particularly in the area of the heliport.
As a result of the accident, plaintiff sustained a non-displaced fracture of the radial head (near the elbow) of her right arm. At the time of the accident, plaintiff did not seek medical attention and attended the show at the arena. She also did not seek medical attention until almost two weeks after the accident. Plaintiff also works in the collection department for a court reporting service and stated that she was not required to miss work as a result of this accident, although she states that the injuries hindered her job duties.
*1046 Plaintiff saw two physicians. First, plaintiff saw general practitioner named Dr. Robert Songy on January 19, 2000. She then saw an orthopedist named Dr. Warren Bourgeois, initially on January 21, 2000 and two more times in February and in March. She was treated conservatively and kept in a sling for approximately 5 weeks. She was treated for approximately two months. Plaintiff states that she has fully recovered but that she has residual pain in performing some of her daily activities.
The ad hoc district court judge, Mickey Landry, found in favor of the plaintiff. Judge Landry, applying the merchant liability statute, La. R.S. 9:2800.6, held that the Superdome was liable for the injuries sustained by the plaintiff. The judge also found the plaintiff comparatively at fault and assessed fault at 80% for the Superdome and 20% for the plaintiff. The judge also assessed plaintiff's damages in the amount of $23,319.00 ($22,500 in general damages, $819 in medicals). With the 20% reduction, the court awarded $18,655.20.
The defendants appeal, raising the following issues: 1) that the trial court improperly assessed liability against the Superdome; 2) that, notwithstanding a finding of liability, the trial court improperly failed to assign the majority of comparative fault on the plaintiff; and 3) that the trial court's assessment of plaintiff's general damages was excessive.
Law and Analysis
Based upon our review of the arguments presented, the record of the court below and the law, we affirm the trial court's determination that the Superdome is liable for the injuries of the plaintiff and the trial court's assignment of fault of the Superdome at 80% and the plaintiff at 20%. However, we find that the trial court did not abuse its vast discretion in assessing plaintiff's damages at $22,500.
Liability in General
In their first assignment of error, defendants argue that the trial court erred is assessing any liability on the part of the Superdome. On this assignment, defendants argue that the condition was open and obvious, noting the different color of the box, adequate lighting and the absence of a history of accidents; and that plaintiff's negligence was the sole cause of plaintiff's injuries.
Louisiana Revised Statutes, Title 9, Section 2800 and Article 2317.1 of the Louisiana Civil Code govern recovery in this particular case. Maldonado v. Louisiana Superdome Com'n, 95-2490 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, writ denied, 97-0469 (La.4/18/97), 692 So.2d 448. The elements of Article 2317.1, after the 1996 amendments, are essentially identical to those of Section 9:2800.[1] Article 2317.1 states as follows:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice or defect, only upon a showing that he know or, in the exercise of reasonable care, should have known of the ruin, vice or defect which caused the damage, that the damages could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
*1047 La. C.C. art. 2317.1. Essentially, Article 2317.1 requires that the plaintiff prove the following: (1) the thing which caused damages was in the control or custody of the defendant; (2) the thing had a defect that created an unreasonable risk of harm; (3) the injuries were caused by the defect; and (4) the defendant had actual or constructive knowledge of the defect. Id.
The condition at issue in this case is a fixed, permanent object on the parking area surface, which condition has existed since the construction of the parking area. As such, the only question regarding liability of the Superdome is whether the box in question constituted an unreasonable risk of harm.
Unreasonably Dangerous Condition
Article 2317.1 requires that plaintiff prove the existence of an unreasonably dangerous condition. La. C.C. art. 2317.1. The determination as to whether a condition is unreasonably dangerous is one that is made by the court based upon the facts and circumstances of each case. Pitre v. Louisiana Tech Univ., 95-1466, p. 9 (La.5/10/96), 673 So.2d 585, 590; Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984).
Whether a particular risk is unreasonable is a difficult question, which requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention. Pitre, 95-1466 at p. 9, 673 So.2d at 590; Socorro v. City of New Orleans, 579 So.2d 931, 939 (La.1991). In making this determination in negligence actions, the "obviousness" and "apparentness" of the complained of condition have historically been taken into consideration. Pitre, 95-1466 at p. 9, 673 So.2d at 590. The duty of a landowner is not to insure against the possibility of an accident on his premises, but to act as a reasonable person in view of the probability of injury to others. Pitre, 95-1466 at pp. 9-10, 673 So.2d at 590 (citing Shelton v. Aetna Cas. & Sur. Co., 334 So.2d 406, 410 (La.1976)).
In analyzing whether the condition in that case constituted an unreasonable risk of harm, the Louisiana Supreme Court examined four major factors involved in making such a determination: (1) the utility of the complained of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the custodian's cost of preventing the harm; and (4) the nature of plaintiff's activity in terms of its social utility or whether it is dangerous by nature. Pitre, 95-1466 at pp. 12-17, 673 So.2d at 591-94.
Given the circumstances of this case, the black box, permanently bolted near the stairway of the Superdome parking lot, constituted an unreasonably dangerous condition. First of all, as testified to by Mr. Brocato, the box in question served no purpose. The box was one in a series of similar such boxes constructed to house wiring and piping for future constructions that were never built. Thus, the box in question was of limited, if any, utility.
Next, the likelihood and magnitude of injury presented by this condition is substantial. A metal box permanently fixed to a floor presents a tripping hazard that has the potential to cause severe physical injury. In addition, the location of the box in close vicinity to the stairwell places it in the area where people are expected to walk.
Furthermore, notwithstanding the different color of the box or the apparent adequacy of the lighting, the circumstances indicate that this condition is not readily apparent. Importantly, the location is a stadium parking lot. Generally, patrons of a stadium are oftentimes unfamiliar with the surrounding area and are concentrating, at least in part, on the proper path to their destination, (i.e., stadium patrons often *1048 are looking for and at signs to guide them to their proper gates of entry, seats, etc.). In addition, a typical event at a stadium may create crowded conditions, sometimes extremely crowded conditions, that would further obscure small, fixed objects on the ground.
Third, the testimony of Mr. Brocato indicates that the cost of repair would not have been that great. Mr. Brocato's testimony indicates that the Superdome had instituted remedial measures of painting the boxes bright colors and placing poles on the boxes themselves. While these measures are not, in and of themselves, indicia of liability as to the untreated boxes, they do indicate the relative ease in which such measures could be implemented. Furthermore, the Superdome would not seem to incur any significant costs by removing the boxes altogether.
Finally, the nature of plaintiff's activity was clearly a socially useful activity and not inherently dangerous. Specifically, plaintiff fell as she was moving out of the path of other stadium patrons. While plaintiff arguably could have executed this activity in a more prudent manner, the activity itself was clearly a reasonable one and not dangerous in nature.
Therefore, given the circumstances of this case, we find that the trial court correctly determined that the box in this instance was an unreasonably dangerous condition and affirm the judgment as to the issue of the liability of the Superdome.
Comparing Fault: Watson Factors
In the second assignment, defendants argue that, even if the trial court did not err in assessing liability against the Superdome, that the court abused its discretion in assessing such a large percentage of fault against the Superdome. Again, the defendants argue that the condition was open and obvious and that the plaintiff's negligence in backing into the box, even if not the total cause of the accident, was such that it warranted much more than a 20% assessment of fault.
The issue of proper allotment of fault between multiple parties at fault is a question of fact; the findings of the lower court should not be disturbed unless they are clearly wrong or manifestly erroneous. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 972 (La.1985). In assessing the assignment of fault among parties, the trier of fact considers the following six factors: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) whether the capabilities of the actors were superior or inferior; (5) whether any extenuating circumstances required the actor to proceed without proper thought; and (6) the relationship between the actor's conduct and the harm to the plaintiff. Maldonado v. Louisiana Superdome Com'n, 95-2490, pp. 9-10 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, 1093, writ denied, 97-0469 (La.4/18/97), 692 So.2d 448 (citing Watson, 469 So.2d at 974).
The assignment of fault in this case is within the discretion of the trial court. The evidence does indicate inattentiveness on the part of the plaintiff, which the trial court took into account. Notwithstanding the inattentiveness of plaintiff, the evidence supports the trial court's allocation of fault. First, plaintiff was unfamiliar with the area and was not proceeding in the face of a danger known to her. Further, plaintiff's action in "backing up" resulted from the reasonable action of attempting to clear a path for people coming up from behind.
The Superdome, as custodians of the parking lot, clearly can anticipate that its patrons will be unfamiliar with the parking area and that, at a given event, there will be large numbers of patrons in the parking area. As such, situations in which patrons, *1049 unfamiliar with the surroundings, will be required to move from the path of other patrons, are not unreasonable or unforeseeable situations.
A reasonable interpretation of the facts supports the proposition that the Superdome bore the majority of fault both as to the nature of the conduct as well as the relationship to the damage. Accordingly, we find that the allocation of fault was within the discretion of the trial court and affirm the judgment on this issue.
Quantum
In the final assignment, defendants argue that the assessment of plaintiff's general damages in the amount of $22,500.00 is excessive. The standard for appellate review is difficult to express and is generally non-specific. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). However, the discretion afforded the trial court has been characterized as "great, and even vast" so that an appellate court should rarely disturb an award of general damages. Id. An award of general damages should only be disturbed where the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular person under the particular circumstances. Id.
Plaintiff is a 62-year-old woman, right handed, who works in the collections department for a court reporting service. As a result of the accident, she sustained a non-displaced fracture of the radial head (near the elbow) of her right arm. Plaintiff did not seek medical treatment for almost two weeks post accident. She was treated for approximately two months and wore a sling for five weeks. During her treatment she missed no work, although both her work and her activities at home were severely hampered by the injury. Dr. Bourgeous' notes indicate that plaintiff was "using [her] arm more than instructed." At the end of treatment, plaintiff fully recovered in that she has no disability. Plaintiff has, however, testified to having considerable residual pain when performing certain daily activities.
Based on these factors, we cannot find that the general damage assessment constitutes an abuse of the vast discretion afforded to the trial court by the jurisprudence. We do note, however, that this award is unusually high and hovers just within the limits of that discretion. Nevertheless, the injury in this case involved a bone fracture; which, while relatively minor in this particular case, is, by its very nature, a substantial injury to an elderly individual. Due to the nature of this injury, the trial court was clearly entitled to give great weight to plaintiff's testimony regarding her pain and difficulty recovering from this injury. Further, the trial court assigned considerable weight to the plaintiff's advanced age and testimony regarding her residual pain. Given these factors, while this award is unusually high, we cannot say that it is abusively so. We therefore hold that the award is within the vast discretion of the trial court.
Conclusion
Accordingly, we hold that the trial court did not err in assessing liability on the part of the Superdome for the injuries of plaintiff or in assigning the percentages of fault in this case. We further hold that the trial court's assessment of plaintiff's general damages at $22,500 does not constitute an abuse of the vast discretion of the trial court. The judgment is therefore affirmed.
AFFIRMED.
MURRAY, J., concurs in the result.
NOTES
[1] Section 9:2800 governs liability against public entities and places conditions on the application of Article 2317 against such entities. Section 9:2800 states that Article 2317 applies to public entities "for damages caused by buildings within [their] care or custody." La. R.S. 9:2800(A). In all residual cases where Article 2317 would apply, Section 9:2800(B) further requires that the plaintiff establishes actual or constructive notice of the condition, a reasonable opportunity to repair the condition and a failure of defendant to do so. Id. As the 1996 amendments to Article 2317.1 have incorporated these requirements, Section 9:2800 has been rendered superfluous.