847 So.2d 665 (2003)
Earline HUTCHISON
v.
KNIGHTS OF COLUMBUS, COUNCIL NO. 5747, Rebel Amusement Rides, Inc., and St. Paul Fire and Marine Insurance Company.
No. 2002-CA-1817.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 2003.
*666 Darleen M. Jacobs, Al A. Sarrat, Robert A. Preston, Jr., Jacobs & Sarrat, New Orleans, LA, for Plaintiff/Appellant, Earline Hutchison.
Thomas R. Hightower, Jr., Wade Kee, Lafayette, LA, Frank D. Ippolito, Law Offices Of Frank D. Ippolito, Chalmette, LA, for Defendant/Appellee, Knights of Columbus, Council No. 5747.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS Sr. and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Judge.
This is an appeal from a summary judgment for the defendants in a trip-and-fall case. Because we find that there are genuine issues of material fact, we will reverse and remand for further proceedings.
The plaintiff, Earline Hutchinson, accompanied by her husband, visited the Crawfish Festival in Chalmette, Louisiana. She entered between two amusement park type rides and left the same way. As she left the festival, she tripped and fell on a bundle of electric cables that were used to power the rides. She was allegedly injured by the fall. She filed suit against the Knights of Columbus Council No. 5747, Rebel Amusement Rides, Inc. and St. Paul Fire and Marine Insurance Company. She argues that there was negligence as to the placement of the cables and the lack of barricades and/or warnings of the electric cables.
The defendants moved for summary judgment. The defendants argued that they violated no duty that they owed to the plaintiff, i.e., that they were not negligent. The plaintiff and her husband each submitted affidavits in opposition to the motion for summary judgment.
The plaintiff's husband's affidavit states as follows:
I am of the full age of majority. I am married to Earline Hutchison. I was with my wife, Earline Hutchinson at the time of this accident, March 28, 1998. At approximately 6:30 p.m. we parked our car on Jean Lafitte Parkway on the neutral ground across the street from the Crawfish Festival. We looked for an entrance and not seeing one, we followed some other people into the Festival. We walked into the festival between *667 two rides. At approximately 10:30 p.m. we were leaving the festival and we walked out in approximately the same location as we walked in, between two rides. My wife was walking ahead of me. I saw her fall. When I looked down I saw the black cables for the first time. Neither of us had anything alcoholic to drink before or during the time we were a the festival.
We did not have to cross any barricades to enter or exit the festival. The barricades I saw surrounded individual rides. There were no barricades across any of the pedestrian pathways. There was nothing to keep anyone from walking between any of the rides. We did not have to pay to get into the festival.
I went back to the scene of the accident the next day, again I did not have to cross any barricades to get there. I took some pictures of the area where my wife fell. Ex.1 is a copy of one of the photographs I took of the cables that my wife tripped on. At the time of the accident the cables were in the parking lot between the rides. The next night they had been moved against the curb as depicted in the picture, Ex. 1.
After my wife fell, Mr. I Charles Deubler Sr., came to the scene and said he was the safety coordinator. He asked what happened and I told him my wife tripped on these wires. He said I told these people about these wires. I am going to stand here until someone comes and covers up these wires so no one else will trip on them. Mr. Duebler gave us his card (Ex. 2) and the Louisiana Crawfish Festival medical treatment form (Ex. 3).
The plaintiff's affidavit states as follows:
I am of the full age of majority. On March 28, 1998 my husband and I went to the Crawfish Festival in Chalmette, Louisiana. At approximately 6:30 p.m. we parked our car on Jean Lafitte Parkway on the neutral ground across the street from the Crawfish Festival. We looked for an entrance and not seeing any, we followed some other people into the Festival. We walked into the festival between two rides. At approximately 10:30 p.m. we were leaving the festival and we walked out in approximately the same location as we walked in, in between two rides. Neither of us had anything alcoholic to drink before or during the time we were at the festival.
We did not have to cross any barricades to enter or exit the festival. The barricades I saw surrounded individual rides. There were no barricades across any of the pedestrian pathways. There was nothing to keep anyone from walking in between any of the rides. We did not have to pay to get into the festival.
After I fell, Mr. I Charles Deubler Sr., came to the scene and said he was the safety coordinator. I told him I think I need to go to the hospital. He said the cables should not have been where they were. The cables should have been covered and out of the pathway. Mr. Duebler gave us his card (Ex. 2) and the Louisiana Crawfish Festival medical treatment form (Ex. 3).
The plaintiff also submitted portions of her deposition testimony in opposition to the motion for summary judgment.[1]
*668 The defendants advance several arguments as to why the plaintiff's trip-and-fall, and consequent alleged injury, were not the result of any negligence of the defendants. Specifically, they argue that there was a designated entrance to the festival but that the plaintiff chose to enter between two rides. They also point out that she had entered the festival at the same spot only hours before and so should have been familiar with the area. The defendants assert that the tripping hazard was "open and obvious." They also point to the plaintiff's deposition testimony that the cables were bundled neatly (as opposed to laid haphazardly) and that the plaintiff had turned her head towards her husband (presumably, she was no longer looking straight ahead) at the time of her trip-and-fall. The defendants argue that the plaintiff entered and exited the festival through an area "designated" by the defendants for the placement of electric cables (however, the defendants do not assert that there were any signs or other means used to warn visitors that the area was "designated" for cables). Lastly, the defendants assert that they were unaware of the danger because, to their knowledge, no other person had been injured at the same spot previously.
We believe that the defendants' arguments can be fairly summarized as three general points. First, there was not an unreasonably dangerous condition. Second, if there was an unreasonably dangerous condition, the defendants were not aware of it. Third, that the plaintiff was at fault as to her trip and fall.
As to the first two points, this court has held:
The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This person must discover any unreasonably dangerous conditions on the premises and correct the condition or warn potential victims of its existence. This duty is the same under both the strict liability theory of LSA-C.C. art. 2317 and the negligence theory of LSA-C.C. art.2315.
Ann T. Cooper Leaman v. Continental Casualty Co., XXXX-XXXX (La.App. 4 Cir. 09/26/2001), 798 So.2d 285, writ denied, XXXX-XXXX (La.03/08/02), 810 So.2d 1165.
Whether a condition is unreasonably dangerous requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. E.g., Nelson v. Louisiana Stadium and Exposition District, XXXX-XXXX (La.App. 4 Cir. 11/13/02), 832 So.2d 1043.
The defendants contend that there was a designated entrance to the festival. However, the plaintiff's affidavits establish a genuine issue of fact that the plaintiff and her husband did not see an entrance, that they followed other people into the festival, between two rides, and that they left the same way.
The defendants argue that the cables were "bundled neatly". Yet, particularly in light of the photograph of the bundles of cables presented by the plaintiff, it appears that bundling the cables created a single, larger, higher obstacle and thus, arguably, increased the tripping hazard.
The defendants argue that the area where the plaintiff tripped and fell had been "designated" by the defendants as an area for cables. However, the defendants do not contend that they posted any "keep out", "danger" or any other warning signs in the area of the cables or that they *669 placed any barriers, ropes or tapes to keep people out of the area of the cables. According to the plaintiff's affidavits, there was nothing to keep the plaintiff from entering the area "designated" for cables.
The defendants argue that they were not aware of the allegedly dangerous condition because there had been no prior accidents at the location where the plaintiff tripped and fell. However, awareness of potential danger does not come only from the occurrence of accidents. The defendants were certainly aware of the presence of the cables because the defendants placed the cables. Also, the defendants undoubtedly were aware that they placed no warnings or barriers to the area where the cables were located. Further, the possibility of tripping on the cables would be apparent at the time the cables were placed as well as afterward.
The defendants argue that the plaintiff caused her own accident because she previously had passed through the same area where she tripped, because she was looking at her husband (instead of where she was walking) at the time she tripped and because the danger was "open and obvious". Assuming without deciding that the plaintiff was in some degree at fault, that does not necessarily mean that the defendants are entirely relieved of liability but may, instead, mean that some percentage of comparative fault should be assigned to the plaintiff. The assignment of comparative fault is done using a six-factor analysis. Watson v. State Farm Fire & Cas. Ins. Co., 469 S.2d 967 (La.1985). It may be that the trier of fact, even if it finds the defendants liable, will assign some comparative fault to the plaintiff. The fault of the plaintiff (if any) would have to be weighed against the fault (if any) of the defendants.
With particular reference to the defense argument that the danger was "open and obvious", we note that this is one factor, to be considered along with other relevant facts, as to whether the cables presented an unreasonable danger. Joseph v. City of New Orleans, XXXX-XXXX (La App.4 Cir. 03/05/03), 842 So.2d 420.
In sum, there are genuine issues as to the material facts as to whether: (1) the cables and the overall situation presented an unreasonable danger; (2) whether the defendants knew or should have known of the danger; and (3) whether any comparative fault should be assigned to the plaintiff and, if so, how much. We do not decide these items, but, instead, decide only that they are not susceptible in this case to summary judgment because there are genuine issues of material fact, La. Code Civ. Proc. art. 966, see, e.g., Hardy v. Bowie, 744 So.2d 606 (La.1999), which must be decided by trial.
For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The defendants complain that the plaintiff's affidavit is inconsistent with her deposition testimony. Specifically, the defendants complain that, in her deposition, the plaintiff testified that she entered and left the festival "between two rides" and that, in her affidavit, the plaintiff states that she entered on a "pedestrian walkway". Actually, the plaintiff's affidavit specifically states that she and her husband "walked into the festival between two rides". Thus, the affidavit and the deposition are not inconsistent.